UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

VERA GRETCHYN MARINO,          )
                               )
          Plaintiff,           )
                               )
          v.                   )     Case No. 2:11-cv-241
                               )     (lead case)
BANK OF AMERICA HOME           )
LOANS, BANK OF AMERICA         )
CORPORATION, individually      )
and as successor to the        )
interests, credits and         )
liabilities of COUNTRY         )
WIDE HOME LOANS, INC.,         )
                               )
          Defendants.          )

VERA GRETCHYN MARINO,          )
                               )
          Plaintiff,           )
                               )
          v.                   )     Case No. 2:11-cv-243
                               )
COUNTRY WIDE HOME LOANS,       )
INC. and BANK OF AMERICA       )
HOME LOANS and BANK OF         )
AMERICA CORPORATION,           )
interests, credits and         )
liabilities of COUNTRY         )
WIDE HOME LOANS, INC.,         )
                               )
          Defendants.          )

OPINION AND ORDER
(Docs. 16, 18)

     Plaintiff Vera Gretchyn Marino, proceeding *pro se*,

brings this consolidated action against Defendants

Countrywide Home Loans, Inc. ("Countrywide"), Bank of

America, N.A. ("BANA") (named in the Amended Complaint as

Bank of America Home Loans), and Bank of America Corporation ("BAC"), alleging that she was defrauded into refinancing her home.  Defendants now move to dismiss, and Marino moves for leave to amend her Amended Complaint.  For the reasons set forth below, the motion to dismiss is GRANTED in part and DENIED in part, and Marino's motion to amend is also GRANTED in part and DENIED in part.

## Factual Background

For purposes of the pending motion to dismiss, the facts alleged in the Amended Complaint will be accepted as true.  Marino, an attorney, owns a home located at 46 Quarter Mile Road in Winhall, Vermont.  According to the Amended Complaint, she has lived in the house for approximately forty-four years.  The original mortgage on the house was paid off in or about 1980.

Beginning in September 2005, Marino was solicited by two Countrywide agents, Mark Memmelo and Steve Da Silva, to take out a mortgage on her house.  Memmelo allegedly told Marino that "the money in her home was doing nothing for her," and that she could "put that equity money to use for her security in her senior years."  (Doc. 15 at 5-6.) Marino was sixty-seven years old at the time.  Memmelo also

allegedly informed Marino that any commission due to him or Countrywide would not be charged to her, assured her that he was trustworthy, and told her that he "had her financial interests at heart." Id.

On September 13, 2005, Memmelo told Marino that the interest rate on the new loan would be, at worst, 5.8%. At Memmelo's request, the home was appraised and the reported value was $610,000. Memmelo then informed Marino that he could write a loan in the amount of approximately $350,000 to $375,000.

Marino subsequently asked Memmelo's opinion about using the proceeds of the refinancing to purchase a condominium in New York City. Memmelo allegedly responded: "That's a great idea, that's a hot market, that's good, but let's not tell anyone about that." Id. at 7.

On October 4, 2005, Marino received a document from Countrywide's Edwin Marini, with whom she had not had any prior contact, informing her she was applying for a loan with an interest rate that exceeded the "Declared Rate" by 3%, and for which the lender would charge more than four points. The notice from Marini did not specify either the actual interest rate or the number of points on the loan.

That same day, Marino received a second document from
Trinidad Blanchet, stating that the loan amount would be
$360,000, with a discount fee of $900 and an interest rate
of 9.75%, discounted .25%, with a monthly payment of $2,925
for principal and interest.

When Marino read the terms of the loan she called
Memmelo, who allegedly assured her "not to worry, that this
is a formality only, didn't I tell you that the worst case
would be around 5 or 6%, and don't forget, there are no
points[] charged to you." Id.  Memmelo also allegedly
assured Marino that the documents she had received were a
"screw up," but urged her to sign the document sent by Edwin
Marini.  Id. at 8.  Marino signed the document as requested.

On October 5, 2005, Marino signed a contract to
purchase a condominium in New York City.  The down payment
on the condominium was $95,000, with a purchase price of
$950,000.  Under the terms of the deal, Marino forfeited her
down payment if the transaction did not close by November
30, 2005.

Marino claims that the interest rate on her Vermont
refinancing "came to be 10% on October 5, 2005, the date of
closing this loan with [Countrywide]."  Facing the potential

of forfeiting the down payment on the New York City property if she did not receive funds from Countrywide, Marino closed on the Vermont refinancing. The Amended Complaint alleges that because of the stress of these events, Marino suffered a "coronary occlusion" eleven days after the transaction. The condition required emergency surgery, and has since resulted in "coronary sequellae . . . , uncontrolled hypertension and acute emotional distress." Id. at 10.

Marino reports that although Memmelo assured her that New York City was a "hot market," and that a condominium there would rise in value, the condominium was sold in June 2011 at a considerable loss. In 2012, she discovered that she was unable to continue the payments on her Vermont home.

Marino further alleges that from 2004 through 2008, officers and directors at Countrywide conspired to

> embark on a secret corporate strategy and plan, on a national scale, to maximize the number of mortgages . . . that it sold to the public at large, by directing and/or encouraging, through its agents, servants and/or employees, supervisors and team leaders, which included Mr. Memmelo and Mr. DaSilva, to sell as many of its loans as possible by 'steering' and 'encouraging' people into loan contracts, with whatever words, opinions, projections, representations or statements it took, even if such words, opinions, projections, representations or statements, were wild, patently speculative, [or] untrue . . . .

5

Id. at 11. The "ultimate purpose" of this conspiracy, Marino claims, was "to bundle and sell these loans as securities . . . to the world market." Id. at 11. Marino alleges that her refinancing was a result of this broad conspiracy to defraud homeowners.

Countrywide was purchased by Bank of America in July 2008. Marino claims that as a result of Countrywide's alleged deceptions and misrepresentations, Bank of America negotiated a settlement with the Attorney General for the State of California for payment in the amount of $8.68 billion, to be used "for the benefit of the victims of Countrywide's scheme . . . ." Id. at 16. Former Countrywide officers also reportedly paid millions of dollars in penalties for "disgorgement of ill-gotten gains." Id.

The Amended Complaint brings four causes of action. The first alleges fraud and deceptive practices. Marino also asserts within this cause of action that her claim is timely because she did not discover "defendants' illegal interest rate" until May 17-18, 2011. Id. at 18. Elsewhere in the Amended Complaint, she claims the interest rate on her loan was higher than allowed under Vermont law. Id. at

8.

The second cause of action seeks rescission pursuant to the federal Truth in Lending Act ("TILA"). Again addressing timeliness, Marino submits that she was unable to assert her rights under TILA because of her medical condition immediately after the closing on her refinancing, and that federal law allows for equitable tolling. In her response to Defendants' motion to dismiss, Marino requests leave to withdraw this claim. (Doc. 19 at 15.)

Marino's third cause of action alleges breach of contract. Specifically, Marino claims that "[t]he foregoing transactions . . . constitute an express contract . . . which the defendants breached as set forth in the allegations contained herein, causing plaintiff to sustain damages and entitlement to equitable relief." (Doc. 15 at 20.) The fourth cause of action claims that Countrywide and its agents were not properly licensed and otherwise failed to comply with Title Eight of the Vermont Banking and Insurance law. The fourth cause of action also alleges that Countrywide failed to allow Marino an opportunity to execute a notice of cancellation as allegedly required by Title Nine of the Vermont Banking and Insurance Law, and violated

Vermont law by offering an interest-only loan.

For relief, Marino is seeking $1,000,000 "and/or equitable relief, including an injunction against defendants prohibiting proceeding in foreclosure of plaintiff's home" and rescission of her loan agreement. <u>Id.</u> at 14. She contends that damages should be paid out of the settlement funds received by the State of California.

<u>Discussion</u>

I.  <u>Motion to Dismiss</u>

    A.  <u>Legal Standard</u>

Pending before the Court is Defendants' motion to dismiss, filed pursuant to Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the Complaint as true and draw all reasonable inferences in the plaintiff's favor. *Famous Horse Inc. v. 5th Avenue Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must

8

contain sufficient factual matter . . . to 'state a claim to
relief that is plausible on its face.'" *Id.* (quoting
*Twombly*, 550 U.S. at 570).

A claim is facially plausible "when the plaintiff
pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).
More specifically, the plaintiff must allege sufficient
facts to show "more than a sheer possibility that a
defendant has acted unlawfully." *Id.* If the plaintiff has
not "nudged [her] claims across the line from conceivable to
plausible, [the] complaint must be dismissed." *Twombly*, 550
U.S. at 570; *see Iqbal*, 556 U.S. at 680.

In ruling on a motion to dismiss pursuant to Rule
12(b)(6), a district court must ordinarily construe a *pro se*
complaint liberally, *see Hill v. Curcione*, 657 F.3d 116, 122
(2d Cir. 2011), and interpret the claims as raising the
strongest arguments that they suggest. *Triestman v. Fed.
Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). In
this case, however, the plaintiff is an attorney who has
practiced for many years in personal injury and general
practice law. (Doc. 19 at 5.) Consequently, she does not

receive "the special consideration which the courts customarily grant to the *pro se* parties." *Harbulak v. County of Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001).

B. <u>Licensing Claim</u>

Defendants first address Marino's claim that Countrywide was not a licensed lender in Vermont on October 6, 2005. Defendants submit that, contrary to Marino's allegation, Countrywide was a licensed lender in Vermont from April 19, 2000 through February 6, 2009, operating under Licence Number 4745. Defendants further contend that the Court may consider this fact as a matter of public record. Licensing information is available through a national registry, which may be accessed through the website for the Vermont Department of Financial Regulation. (Doc. 17 at 7) (citing http://www.nmlsconsumeraccess.org and http://www.dfr.vermont.gov/banking/home).

When considering a motion to dismiss, a court must confine its considerations to "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters

of which judicial notice may be taken." *Thomas v. Goord*, 215 F. App'x 51, 52 (2d Cir. 2007) (internal quotation marks and citations omitted); *see also Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). The doctrine of judicial notice is governed by Federal Rule of Evidence 201, which states that "a court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

It has been held that records made available through a state-run website may be judicially noticed under Rule 201. *See Desclafani v. Pave-Mark Corp.*, 2008 WL 3914881, at *6 (S.D.N.Y. 2008) (holding that the court could take judicial notice of records from the Florida Department of State, Division of Corporations Website pursuant to Federal Rule of Evidence 201); *see also Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004) (noting it was proper during Rule 12(b)(6) review to consider "publicly available [statistics] on the official redistricting website of the Virginia Division of Legislative Services"). As Countrywide's licensing was a

matter of public record through a state agency, the Court may consider Defendants' evidence.  Because that evidence shows that Countrywide was, in fact, licensed during the relevant time period, Defendants' motion to dismiss on that claim is GRANTED.

    C.   <u>Claims Under Titles Eight and Nine</u>

In addition to her licensing claim, Marino alleges in her fourth cause of action that Countrywide failed to comply with Title Eight of the Vermont Banking and Insurance law with respect to "origination, . . . records or continuing education for mortgage loan originators."  (Doc. 15 at 21.) She also claims that Countrywide "failed to comply with *Title 9 of the Vermont Commerce and Trade Law* in failing to provide plaintiff with an opportunity to execute a notice of cancellation . . . ," and by "engaging in practices which are prohibited therein, including but not limited to prohibition against deception and interest only loans." (Doc. 15 at 21.)  As a result of these alleged infractions, Marino asserts that her loan is unenforceable.

Defendants argue that these claims are not alleged with sufficient specificity.  They contend that the Title Eight claim lacks any reference to "specific 'rules and

regulations,'" while the Title Nine claims do not "identify the practices engaged in by Countrywide which are prohibited by Title Nine." (Doc. 17 at 9.) With respect to the first argument, the Second Circuit has held that "the failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim." *McEachin v. McGuinnis*, 357 F.3d 197, 199 n.2 (2d Cir. 2004) (citations omitted). "Factual allegations alone are what matters." *Id.* Marino's Title Eight claims include allegations of a failure to maintain records and failure to adhere to educational requirements. While the Court expresses no opinion at this time about the merits of such claims, the claims do not fail for lack of citation to a specific rule or regulation.

With respect to the Title Nine claims, the Amended Complaint alleges deceptive practices – by Memmelo specifically and Countrywide generally – and an interest-only loan. As with the Title Eight claims, a failure to cite to specific sections of Title Nine does not, at this early stage in the case, render such claims insufficient. The motion to dismiss for lack of specificity is therefore DENIED.

Defendants also argue that the only two statutes

specifically referenced in the Amended Complaint – 8 V.S.A. § 10402 and 9 V.S.A. § 104 – do not provide private rights of action.  Marino has not offered any response to this argument.  The Vermont Supreme Court has explained that "[e]ven if we assume, without deciding, that the defendants' conduct violated [the statute or regulation in question], the violation of a statute or regulation does not in an of itself give rise to a private right of action for damages." *Cronin v. State*, 148 Vt. 252, 254-55 531 A.2d 929, 931 (1987), *overruled on other grounds by Libercent v. Aldrich*, 149 Vt. 76, 539 A.2d 981 (1987).  The Vermont Supreme Court has also instructed that a private cause of action is available only if, among other things, there is an indication that the legislature intended to allow such a remedy.  *See Livington v. Town of Hartford*, 186 Vt. 547, 552, 979 A.2d 459, 464 (2009) (citing *Carr v. Peerless Ins. Co.*, 168 Vt. 465, 473, 724 A.2d 454, 459 (1998)).

Section 10402 of Title Eight states in its entirety: "An entity subject to this chapter shall be subject to and comply with the provisions of chapter 4 of Title 9."  8 V.S.A. § 10402.  Nothing in this language suggests a legislative intent to create a private right of action.

14

Section 104 of Title Nine empowers the Vermont Tax
Commissioner to impose penalties where a lender fails to
make specified disclosures.  The Commissioner has discretion
to impose an administrative penalty, and/or to order the
refund of charges to a borrower who did not received the
required disclosures.  9 V.S.A. § 104(c).  The statute does
not mention a private cause of action.  Moreover, as the
Vermont Supreme Court has cautioned, "a private right of
action . . . would potentially frustrate the legislative
scheme for enforcement of [these] rules and regulations."
*Cronin*, 148 Vt. at 255, 531 A.3d at 931.  The motion to
dismiss Marino's claims under 8 V.S.A. § 10102 and 9 V.S.A.
§ 104 is therefore GRANTED.

In her opposition memorandum, Marino cites three
additional sections of Title Eight as included (though not
initially specified) in her claim.  The first of these is
the Vermont consumer fraud statute, 9 V.S.A. § 2453.  The
second is 8 V.S.A. § 2209a, pertaining to continuing
education of mortgage brokers.  The third is 8 V.S.A. §
2231, which allegedly prohibits interest-only loans.
Defendants oppose any claim brought under these latter two
statutes, arguing that they do not apply in this case.

15

With respect to § 2209a, Defendants contend that the continuing education requirement is a prerequisite for the banking Commissioner to license mortgage brokers. Individual litigants, they argue, cannot challenge a broker's compliance with the requirement. Indeed, the statute merely describes the requirements, and nothing in therein suggests a legislative intent for anyone other than the Commissioner to enforce those requirements. *See* 8 V.S.A. § 2209a.

As to § 2231, Marino cites language requiring that "all loan contracts made under the provisions of this chapter shall require repayment in substantially equal consecutive monthly installments of principal and interest combined." 8 V.S.A. § 2231(a). However, the statute explicitly excludes loans originated pursuant to 8 V.S.A. § 2216, which in turn governs loans that are secured by a lien against real estate. *See* 8 V.S.A. § 2231(a). Accordingly, the motion to dismiss is GRANTED with respect to any claims being brought pursuant to 8 V.S.A. §§ 2209a and 2231.

D. <u>TILA Claim</u>

As noted above, Marino has requested permission to withdraw her second cause of action under TILA, explaining

that the claim appears to be "time barred, [and] is unlikely to be equitably tolled." (Doc. 19 at 15.)  This claim is therefore DISMISSED without prejudice.

E.   Fraudulent Misrepresentation and Consumer Fraud

Defendants next argue that Marino's fraudulent misrepresentation and consumer fraud claim are inadequately pled.  Specifically, Defendants submit that Marino's reliance upon Memmelo's statements – first about the 9.75% interest rate being a "screw up," and second about the wisdom of investing in New York City real estate – was not reasonable.  Marino counters that Defendants' argument is premature, as questions of reasonability are for a jury to decide.

Under Vermont law, a claim for fraudulent misrepresentation requires reliance that is justified.  *See Lewis v. Cohen*, 157 Vt. 564, 570, 603 A.2d 352, 354 (1991). It has also been held that where "it is clear from the full text of a representation or from facts about the relationship of the parties that reliance should only follow an independent inquiry," a plaintiff will be expected to have made that inquiry.  *Winton v. Johnson & Dix Fuel Corp*., 147 Vt. 236, 241, 515 A.2d 371, 374 (1986)).

With respect to the interest rate on the loan,
Defendants contend that Marino should not have relied solely
upon Memmelo's representations, but should have contacted
Countrywide directly to inquire as to the actual terms.
They also argue that Memmelo's statements about the New York
City real estate market were matters of opinion and
speculation, and thus did not warrant reliance. *See id.*
(holding that claim of misrepresentation cannot be based
upon "judgment or speculation about the future").

When considering reasonable reliance in the context of
a motion to dismiss, a court may "consider the entire
context of the transaction, including factors such as its
complexity and magnitude, the sophistication of the parties,
and the content of any agreements between them." *Emergent
Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F .3d
189, 195 (2d Cir. 2003). Because the analysis "involve[s]
many factors to consider and balance, no single one of which
is dispositive," the Second Circuit has noted that
justifiable reliance is "often a question of fact for the
jury rather than a question of law for the court."
*STMicroelectronics, N.V. v. Credit Suisse Securities (USA)
LLC*, 648 F.3d 68, 81 (2d Cir. 2011) (citation omitted).

In general, the question on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)). Here, the relationship between the parties, Marino's level of sophistication, and the content of all relevant communications has not been fully presented to the Court. Marino claims that she relied upon Memmelo's expertise, and the Court finds that her allegations set forth plausible claims of fraud. The motion to dismiss her claim is premature, and is therefore DENIED.

F. <u>Breach of Contract</u>

Defendants argue that although Marino claims a breach of contract, she does not specify what contract was breached. In her opposition memorandum, Marino contends that she agreed to be Memmelo's customer and to purchase a loan, and that this agreement constituted a contract. "Plaintiff and defendant acted upon this contract in their conversations with each other from September 12, 2005 to October 4, 2005," during which Memmelo allegedly "breached their contract as to the interest rate," and "propelled the plaintiff . . . to commit to a contract of purchase for the

New York City condominium on October 5, 2005." (Doc. 19 at 12.)

Defendants characterize Marino's argument as alleging a mortgage loan contract that was formed through oral negotiations with Memmelo. Because Vermont's Statute of Frauds requires any contract for a sale of land to be in writing, Defendants argue that Marino's breach claim would be barred as a matter of law. *See* 12 V.S.A. § 181. Marino's claim, however, alleges a contract, either express or implied, for Memmelo's good faith services as a mortgage broker or originator. She is not alleging a breach of the loan agreement itself, or of any contract for a sale of land. Accordingly, her claim is not barred by the Statute of Frauds.

Defendants also argue that because Marino's allegation stems from discussions with Memmelo beginning on September 12, 2005, her filing of the Complaint more than six years later, on October 5, 2011, is untimely. *See* 12 V.S.A. § 511 (establishing general six-year limitations period for civil actions). The Amended Complaint alleges conversation between Memmelo and Marino that began in September 2005, and continued into early October of that year. Under Vermont

20

law, a cause of action for breach of contract accrues not
when the contract is formed, but when the breach occurs.
*See Alexander v. Gerald E. Morrissey, Inc.*, 137 Vt. 20, 24,
399 A.2d 503, 505 (1979).  Assuming a contract for Memmelo's
services, the parties have not identified or argued the
precise date of the breach.  Accordingly, the Court declines
to dismiss Marino's breach of contract claim as untimely at
this time, and Defendants' motion to dismiss that claim is
DENIED.

     G.   <u>Claims Against Bank of America</u>

     The Amended Complaint does not contain any allegations
against BANA or BAC.  When Defendants noted this in their
motion to dismiss, Marino's reply memorandum proposed a new
cause of action alleging that "Bank of America, by its
negotiation, participation and acquisition of Countrywide's
assets and liabilities, together with acquiring $8.68
billion . . . to reimburse the victims of defendant . . .
became responsible to the victims of Countrywide . . . ."
(Doc. 19 at 22.)

     Defendants now contend that under Vermont law, the
liabilities of a predecessor corporation will pass to the
successor corporation "only when the change of ownership is

occasioned by statutory merger or consolidation." (Doc. 22 at 5) (citing *Ostrowski v. Hydra-Toll Corp.*, 144 Vt. 305, 307 (1984)). They also submit, through representations in counsel's memorandum, that Countrywide continues to exist as a separate corporate entity.

There is currently no record evidence as to the nature of Bank of America's alleged acquisition or merger with Countrywide. The Court notes that, in other jurisdictions, Bank of America has been substituted as a party for Countrywide entities in actions alleging wrongdoing by Countrywide and its agents. *See, e.g.*, *Riggins v. Bank of America, N.A.*, 2013 WL 319285, at *1 (C.D. Cal. Jan. 24, 2013) (noting that "BANA is the successor in interest to Countrywide [Home Loans, Inc.]"); *Lee v. Countrywide Home Loans, Inc.*, 2010 WL 1487131, at *1 n.1 (N.D. Ohio, April 13, 2010) ("Bank of America's presence as a defendant in this case is due to its status as successor by merger to the former Countrywide Bank, N.A.; there is no meaningful difference for present purposes between its own liability and that of defendant Countrywide Home Mortgage. Therefore, the analysis applicable to Countrywide is equally applicable to Bank of America."). The Court also finds that the

Amended Complaint's reference to Bank of America's
settlement with the State of California creates an inference
that Bank of America assumed at least some of Countrywide's
liabilities.  Accordingly, based upon the current limited
record, the motion to dismiss BAC and BANA is DENIED.

II.  Motion to Amend

Also before the Court is Marino's motion to amend her
Amended Complaint.  Rule 15(a)(2) of the Federal Rules of
Civil Procedure provides that "the court should freely give
leave [to amend a pleading] when justice so requires."
Thus, "[w]hen a party requests leave to amend its complaint,
permission generally should be freely granted."  Anderson
News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir.
2012).  However, "[l]eave to amend may properly be denied if
the amendment would be futile."  Id. (citing Foman v. Davis,
371 U.S. 178, 182 (1962)).

Here, Marino has submitted a proposed Second Amended
Complaint.[1]  The Second Amended Complaint would include some
claims – most notably statutory claims under Titles Eight

---

[1] Marino refers to her proposed pleading as a Third
Amended Complaint.  In this consolidated action, Marino has
filed more than one Complaint.  Since consolidation,
however, there has been a single Amended Complaint.  (Doc.
15.)  Accordingly, if Marino files another pleading, the
Court will consider it the Second Amended Complaint.

and Nine of the Vermont statutes – that the Court has determined above would be futile.  The motion to amend to add such claims, and any other claims dismissed above, is therefore DENIED.

To the extent that Marino seeks to amend any claims that were not dismissed above, or add new claims against existing parties, her motion is GRANTED.[2]  Marino may file a Second Amended Complaint within 30 days of this Opinion and Order.

## Conclusion

For the reasons set forth above, Defendants' motion to dismiss (Doc. 16) is GRANTED in part and DENIED in part, and Marino's motion to amend (Doc. 18) is GRANTED in part and DENIED in part.  Marino may file a Second Amended Complaint within 30 days of this Opinion and Order.

Dated at Burlington, in the District of Vermont, this 27th day of February, 2013.

------------------------

[2] In opposition to the motion to amend, Defendants contend that Marino cannot obtain relief under several of the Vermont statutes cited in her proposed amendment. Marino responds that she "should be permitted to plead the rules, ethics and requirements" of Vermont law, and that such allegations "may bear upon the weight given to testimony concerning fraud . . . ." (Doc. 24 at 2.)  If Marino is alleging statutory violations merely as background, and is not seeking relief under those statutes, she must make that clear in her Second Amended Complaint.

/s/ William K. Sessions III
William K. Sessions III
Judge, United States District Court