```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                        DISTRICT OF VERMONT

VERA GRETCHYN MARINO,         )
                              )
        Plaintiff,            )
                              )
        v.                    )   Case No. 2:11-cv-241
                              )   (lead case)
BANK OF AMERICA HOME          )
LOANS, BANK OF AMERICA        )
CORPORATION, individually     )
and as successor to the       )
interests, credits and        )
liabilities of COUNTRY        )
WIDE HOME LOANS, INC.,        )
                              )
        Defendants.           )

VERA GRETCHYN MARINO,         )
                              )
        Plaintiff,            )
                              )
        v.                    )   Case No. 2:11-cv-243
                              )
COUNTRY WIDE HOME LOANS,      )
INC. and BANK OF AMERICA      )
HOME LOANS and BANK OF        )
AMERICA CORPORATION,          )
interests, credits and        )
liabilities of COUNTRY        )
WIDE HOME LOANS, INC.,        )
                              )
        Defendants.           )

VERA GRETCHYN MARINO,         )
                              )
        Plaintiff,            )
                              )
        v.                    )   Case No. 2:13-cv-72
                              )
GREEN TREE SERVICING, LLC,    )
                              )
        Defendant.            )
```

OPINION AND ORDER
(Docs. 42, 43)

Plaintiff Vera Gretchyn Marino, proceeding *pro se*, brings this consolidated action against Defendants Countrywide Home Loans, Inc. ("Countrywide"), Bank of America, N.A. and Bank of America Corporation ("Bank of America"), and Green Tree Servicing, L.L.C. ("Green Tree"), alleging that she was defrauded into refinancing her home. Defendant Green Tree now moves to dismiss for failure to state a claim. For the reasons set forth below, the motion to dismiss is GRANTED in part and DENIED in part.

Factual Background

Marino has owned a home in Winhall, Vermont for approximately forty-five years. The original mortgage on the property was paid off in or about 1980. Beginning in September 2005, Marino was solicited by two Countrywide agents, Mark Memmelo and Steve Da Silva, to take out a new mortgage. Memmelo allegedly told Marino that "the money in her home was doing nothing for her," and that she could "put that equity money to use for her security in her senior years." (Doc. 27 at 7.) Memmelo also allegedly informed Marino that any commission due to him or Countrywide would not be charged to her, assured her that he was trustworthy,

2

and told her that he "had her financial interests at heart." Id.  Marino was sixty-seven years old at the time.

On September 13, 2005, Memmelo told Marino that the interest rate on the new loan would be, at worst, 5.8%.  At Memmelo's request, the home was appraised and the reported value was $610,000.  Memmelo then informed Marino that he could write a loan in the amount of approximately $350,000 to $375,000.

Marino subsequently asked Memmelo's opinion about using the proceeds from the loan to purchase a condominium in New York City.  Memmelo allegedly responded: "That's a great idea, that's a hot market, that's good, but let's not tell anyone about that."  Id. at 8.

On October 4, 2005, Marino received a document from Countrywide's Edwin Marini, with whom she had not had any prior contact, informing her she was applying for a loan with an interest rate that exceeded the "Declared Rate" by 3%, and for which the lender would charge more than four points.  The notice from Marini did not specify either the actual interest rate or the number of points on the loan. That same day, Marino received a second document from Trinidad Blanchet, stating that the loan amount would be

$360,000, with a discount fee of $900 and an interest rate of 9.75%, discounted .25%, with a monthly payment of $2,925 for principal and interest.

When Marino read the terms of the loan she called Memmelo, who allegedly assured her "not to worry, that this is a formality only[.  D]idn't I tell you that the worst case would be around 5 or 6%, and don't forget, there are no points[] charged to you." *Id.* at 8-9.  Memmelo also allegedly assured Marino that the documents she had received were a "screw up," but urged her to sign the document sent by Edwin Marini.  *Id.* at 9.  Marino signed the document as requested.

On October 5, 2005, Marino signed a contract to purchase a condominium in New York City.  The down payment on the condominium was $95,000, with a purchase price of $950,000.  Under the terms of the deal, Marino forfeited her down payment if the transaction did not close by November 30, 2005.

Marino claims that the interest rate on her Vermont refinancing "came to be 10% on October 6, 2005, the date of closing of this loan with Countrywide."  *Id.* at 10.  Facing the potential of forfeiting the down payment on the New York

City property if she did not receive funds from Countrywide, Marino closed on the Vermont refinancing. The Second Amended Complaint alleges that because of the stress of these events, Marino suffered a "coronary occlusion" within eleven days of the transaction. The condition required emergency surgery, and has since resulted in "coronary sequellae . . . , uncontrolled hypertension and acute emotional distress." *Id.* at 11.

Marino reports that although Memmelo assured her that New York City was a "hot market," and that a condominium there would rise in value, the condominium was sold in June 2011 at a considerable loss. As of 2012, Marino was unable to continue the payments on her Vermont home.

Marino further alleges that from 2004 through 2008, officers and directors at Countrywide conspired to

> embark upon a secret corporate strategy and plan, on a national scale, to maximize the number of mortgages, by refinance or otherwise, that it sold to the public at large, by directing and/or encouraging, through its agents, servants and/or employees, supervisors and team leaders, which included Mr. Memmelo and Mr. DaSilva, to sell as many of its loans as possible by 'steering' and 'encouraging' people into loan contracts, with whatever words, opinions, projections, representations or statements it took, even if such words, opinions, projections, representations or statements, were wild, patently speculative, [or] untrue . . . .

*Id.* at 13.  The "ultimate purpose" of this conspiracy, Marino claims, was "to bundle and sell these loans as securities . . . to the world market."  *Id.* at 14.  Marino alleges that her loan was a result of this broad conspiracy to defraud homeowners.

This case is comprised of three consolidated actions, the third of which was brought against Defendant Green Tree. Marino alleges that after she filed the first of the consolidated cases, "Bank of America[] transferred and/or sold this said loan and/or its servicing to Green Tree, for unknown consideration."  (Doc. 35-2 at 4.)  She further claims that Bank of America "either negligently or intentionally, omitted to inform Green Tree of the ongoing litigation between plaintiff and defendants."  *Id.*  Marino's claim against Green Tree is that "by acceptance of ownership, servicing and/or responsibility for collection" of the loan, Green Tree "accepted responsibility to the plaintiff, as a victim of Countrywide, for the restitution of her losses, and all damages, and other requested relief . . . in the previously pending action."  *Id.* at 5.  In addition to damages, Marino asks the Court to enjoin Green Tree from either pursuing a foreclosure or "collect[ing] any

sums from the plaintiff," and for declaratory relief with respect to both her own mortgage and the validity of the agreement between Bank of America and Green Tree.  *Id.*

Green Tree now moves to dismiss, arguing that Marino has failed to allege that it engaged in any actionable conduct.  Green Tree also argues that Marino has no standing to challenge the validity of its agreement with Bank of America.  The motion to dismiss is submitted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## Discussion

I.  Rule 12(b)(6) Legal Standard

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the Complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Famous Horse Inc. v. 5th Avenue Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).  However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to

relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 680.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court must ordinarily construe a *pro se* complaint liberally, *see Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and interpret the claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). In this case, however, the plaintiff is an attorney who has practiced for many years in personal injury and general practice law. (Doc. 19 at 5.) Consequently, she does not receive "the special consideration which the courts

customarily grant to the *pro se* parties." *Harbulak v. County of Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001).

II.  Green Tree's Potential Liability

The claims in this case center upon the conduct of Countrywide agents or employees during the loan's origination.  Green Tree asserts that it is merely the loan servicer, and that it has no liability for conduct that occurred during the origination of the loan.  The facts alleged in the Second Amended Complaint, however, contend that Green Tree is more than just the servicer, and may in fact be the owner of the loan.  As such, Green Tree is alleged to have assumed responsibility for providing Marino all of her requested relief, including damages.

The distinction between the servicer of a loan and the owner of a loan is significant.  The case law indicates that when purchasing a loan, parties may specifically contemplate whether or not the buyer is assuming the liabilities connected to the loan. *See, e.g., Argueta v. J.P. Morgan Chase*, 787 F. Supp. 2d 1099, 1103 n.3 (E.D. Cal. 2011); *Carnero v. Federal Home Loan Mortgage Corp.*, 2012 WL 177560,

at *4 (N.D. Cal. Jan. 23, 2012). The federal code also distinguishes between owners and servicers when assigning liability. *See, e.g.*, 15 U.S.C. § 1641(f)(1) (exempting servicers from liability under the Truth in Lending Act "unless the servicer is or was the owner of the obligation"). Accordingly, a fundamental question at this early stage in the case is whether Marino has set forth a plausible claim that Green Tree owns the loan and may therefore be liable for damages arising out of its origination.

Marino's pleading alleges that Bank of America "transferred and/or sold this loan and/or its servicing to Green Tree." (Doc. 35-2 at 4.) Marino subsequently states that Green Tree may be servicing the mortgage on its own behalf, or on behalf of Countrywide, Bank of America, or "CWABS, Inc., Asset-Backed Certificates Trust 2005-13." *Id.* Accordingly, the claim against Green Tree presents the possibility that it is more than the servicer, and that it may also be the owner of the loan.

Green Tree asserts in its opposition memorandum that it is solely the loan servicer, and argues that Marino's factual allegations support this assertion. With respect to

Marino's claim that Bank of America may have sold the loan, Green Tree argues that "[t]o the contrary, Plaintiff acknowledges that Green Tree communicated to her that it 'service[d] . . . this mortgage . . . on behalf of an entity identified by Green Tree as 'CWABS, Inc., Asset-Backed Certificates Trust 2005-13,'" and that she thus "did not – and cannot – allege that Green Tree is anything more than her mortgage loan service." (Doc. 46 at 3.) This argument reads Marino's allegations too narrowly, as she pleads in the alternative that Green Tree may, in fact, be the owner of the loan and servicing it on its own behalf. Such alternative pleading is permitted by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(d)(2)-(3) (permitting pleading "hypothetically" and the assertion of "Inconsistent Claims or Defenses"); *see also Padre Shipping, Inc. v. Yong He Shipping*, 553 F. Supp. 2d 328, 333 (S.D.N.Y. 2008) ("plaintiffs are allowed to assert inconsistent facts in support of alternative claims, and courts may not construe allegations regarding one claim to be an admission against another") (citation omitted).

As discussed above, the legal standards for a Rule 12(b)(6) motion require the Court to accept all factual

allegations in the Complaint as true and draw all reasonable inferences in the plaintiff's favor. *Famous Horse Inc.*, 624 F.3d at 108. Consequently, at this stage in the case, the Court must accept Marino's assertion that Green Tree may be the owner of the loan, and that it may have accepted responsibility for her damages and any other forms of relief the Court may grant. Green Tree's motion to dismiss all claims against it is therefore DENIED.

III. Green Tree's Contract With Bank of America

Marino contends that Green Tree's "acquisition of the subject loan from Bank of America, is void or voidable because" Bank of America "either negligently or intentionally concealed" the fact that the loan was the subject of litigation. (Doc. 35-2 at 5-6.) Green Tree moves for dismissal of this claim, arguing that Marino has no standing to challenge the validity of its agreement with Bank of America, and that even assuming standing, the failure to inform did not render the contract void or voidable. Green Tree also argues that Marino has not alleged fraud with sufficient particularity. Marino's opposition memorandum does not specifically address these arguments.

The issue of standing is a threshold jurisdictional issue, which a federal court must entertain before reaching the merits of the case.  *Ross ex rel. Dunham v. Lantz*, 408 F.3d 121, 123 (2d Cir. 2005).  Here, Green Tree relies upon the "longstanding contract-law principle . . . that a plaintiff who is not a party to a contract does not have standing to challenge" the validity of the contract.  *Dernier v. Mortgage Network, Inc.*, 2013 VT 96, ¶ 28 (citing *Bischoff v. Bletz*, 2008 VT 16, ¶ 16; *Bryant v. Strong*, 448 A.2d 142, 143 n.1 (Vt. 1982); 13 S. Williston & R. Lord, A Treatise on the Law of Contracts § 37:1, at 5 (4th ed. 2000)).  There is a well-established exception to this general rule where the challenging party is an intended third-party beneficiary to the contract.  *See, e.g., Hedges v. Durrance,* 834 A.2d 1, 4 (Vt. 2003).

There is no indication in the pleadings that Marino was an intended beneficiary of any contract between Bank of America and Green Tree.  The Vermont Supreme Court recently held, however, that "a debtor may challenge the assignment of his or her debt if it is void or entirely ineffective — even if that means allowing a 'stranger to a contract' to assert reasons related to the breach of that contract."

*Dernier*, 2013 VT 96, ¶ 28. Such standing is limited to a challenge that would render the assignment entirely ineffective or void. *Id.*

The Vermont Supreme Court determined in *Dernier* that because the Uniform Commercial Code permits a debtor to challenge the transfer of a "lost or stolen" loan instrument, the plaintiff/debtor had standing to challenge the transfer of a note and mortgage that, he alleged, was fraudulently obtained by the transferee. *Id.* at ¶ 53. The instant case is distinguishable, as Marino alleges fraud on the part of the transferor, Bank of America, and there is no claim that Green Tree "stole" the note and mortgage. Nor has Marino cited any other basis, in the Uniform Commercial Code or otherwise, for her standing to challenge the transfer from Bank of American to Green Tree.

A party invoking jurisdiction of a federal court "bears the burden of showing that [s]he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Here, Marino has not opposed Green Tree's standing argument, and has not carried her burden of demonstrating her standing to challenge the agreement between Green Tree and Bank of America. The motion to

14

dismiss this claim is therefore GRANTED.

IV. Declaratory Relief

Green Tree's final argument is that Marino is not entitled to declaratory relief because without a pending foreclosure proceeding, any statement as to the parties' respective rights would be premature. The Vermont Supreme Court addressed this same question in *Dernier*, and based upon the limited record before it, concluded that declaratory relief was not premature. After noting that Vermont follows "the case-or-controversy requirement of the federal courts," the *Dernier* court reasoned that

> [t]his case has reached the point of a clear controversy between the parties. Plaintiffs are obligated to make payments over time, and defendant's agent has declared them to be in default. We can infer, for purposes of this motion to dismiss, that the agent has accelerated the note requiring plaintiffs to pay the entire amount to avoid an adverse judgment and probably foreclosure. Its letter indicates that it is assessing late charges because of plaintiffs' failure of timely payment.

2013 VT 96, ¶ 41. Based upon Marino's allegation that since 2012 she has been unable to continue payments on her mortgage, this Court can similarly infer that a live controversy exists among the parties. The Rule 12(b)(6) motion to dismiss Marino's request for declaratory relief as

15

premature is therefore DENIED.

V.  Leave to Amend

In the final sentence of her opposition memorandum, Marino asks that the Court deny Green Tree's motion to dismiss, or in the alternative grant leave to amend. Although the Court is denying the bulk of Green Tree's motion, Marino may wish to amend to establish her standing to challenge the agreement between Bank of America and Green Tree.  This Court's Local Rules require that a motion to amend be accompanied by a red-lined version of the proposed pleading.  *See* L.R. 15(a).  Accordingly, Marino may file a motion to amend that complies with the Local Rules, including a red-lined copy of a proposed Third Amended Complaint, for the Court's consideration.

VI. Motion for a Rule 12 Deadline

Green Tree's second motion before the Court is a request for a Rule 12 filing deadline.  Green Tree moves the Court to set the Rule 12 deadline for fourteen days after Green Tree filed its acceptance of service.  The pending motion to dismiss was filed within that deadline.  The motion to set a Rule 12 deadline is GRANTED, and Green Tree's motion to dismiss was timely filed.

Conclusion

For the reasons set forth above, Green Tree's motion to dismiss (Doc. 43) is GRANTED in part and DENIED in part, and its motion for an order setting a Rule 12 deadline (Doc. 42) is GRANTED.

Dated at Burlington, in the District of Vermont, this 10th day of December, 2013.


                         /s/ William K. Sessions III
                         William K. Sessions III
                         Judge, United States District Court